**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| JIMMY GRISSOM, | ) Case No. ED CV 17-1025-AS |
| | ) |
|          Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
|    v. | ) |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
|          Defendant. | ) |
| | ) |

**PROCEEDINGS**

On May 23, 2017, Plaintiff filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12). On October 17, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15, 16). On February 27, 2018, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 23).

The Court has taken this matter under submission without oral argument.  See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On September 19, 2013, Plaintiff, formerly employed as a painter, carpenter, and construction worker, (see AR 214-19), filed DIB and SSI applications alleging an inability to work because of a disability since September 2, 2010.  (AR 161, 168, 203).  On August 24, 2015, an Administrative Law Judge, Michael D. Radensky ("ALJ"), heard testimony from a vocational expert, David Rinehart ("VE"), and Plaintiff, who was represented by counsel.  (See AR 33-50).  On September 21, 2015, the ALJ issued a decision denying Plaintiff's applications.  (See AR 18-28).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case.  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 2, 2010, the alleged onset date.  (AR 20).  At step two, the ALJ found that Plaintiff's history of left foot injury is a severe impairment.[1] (Id.).  At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 21).  Before proceeding to step four, the ALJ found

---

[1]    The ALJ found Plaintiff's hepatitis C to be non-severe. (AR 20-21).

that Plaintiff has the following Residual Functional Capacity ("RFC")[2]:

> [Plaintiff can] perform light work . . . except [he] can stand and walk for two hours out of an eight-hour workday. He can perform occasional postural activities, except he can never climb ladders, ropes, or scaffolds. He can never operate foot pedals or controls with his left lower extremity. [Plaintiff] must avoid moderate exposure to vibration and avoid all exposure to unprotected heights or dangerous machinery.

(Id.).  At step four, the ALJ noted that Plaintiff is unable to perform any past relevant work.  (AR 25-26).  Relying on the VE's testimony at step five, the ALJ found that Plaintiff, with his age (forty-seven on the alleged onset date), education, work experience, and RFC, can perform the following representative jobs existing in significant numbers in the national economy: assembler, small products I (Dictionary of Occupational Titles ("DOT") 706.684-022); electronics worker (DOT 726.687-010); and information clerk (DOT 237.367-018).  (AR 26-27).  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 2, 2010, through the date of th[e] decision."  (AR 27).

---

[2]  A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 22, 2017. (AR 12). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g),1383(c).

## STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ erred in (1) rejecting the opinions of his treating physician, Clifford Merkel, M.D.; and (2) evaluating Plaintiff's credibility. (See Joint Stip. at 4-32).

4

**DISCUSSION**

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

**A.   The ALJ Did Not Err in Rejecting the Opinions of Treating Physician Clifford Merkel, M.D.**

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.   20 C.F.R. § 416.927(c)(2); see Trevizo v. Berryhill, 871 F.3d 664 (9th Cir. 2017).   When a treating physician's opinion is not controlling, it is weighted based on factors such as

---

[3]   The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886–88 (9th Cir. 2011); Burch, 400 F.3d at 679 (an ALJ's decision will not be reversed for errors that are harmless).

the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record as a whole, and specialization of the physician. 20 C.F.R. § 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester v. Chater, 81 F.3d at 830-31. However, if a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830-31.

On March 4, 2013, orthopedic specialist Dr. Merkel examined Plaintiff and completed a primary treating physician's maximum medical improvement evaluation for the purpose of rating Plaintiff's impairment in the context of a workers' compensation claim. (AR 541-45). Dr. Merkel described Plaintiff as "a 50-year-old painter" who suffered a "left distal fibula fracture" as the result of a workplace injury on September 2, 2010. (AR 544). The fracture "healed following closed treatment," but it aggravated Plaintiff's "pre-existing arthrosis of the left ankle," causing increased ankle pain. (AR 544). Dr. Merkel explained that a treatment plan involving fusion surgery was disrupted when Plaintiff presented with an abscessed septic ankle joint. (Id.). Plaintiff underwent treatment for the septic joint, and he "has progressively developed a severe deformity of his ankle and is now dependent on an elaborate

combination of orthotics to control his foot and ankle position to allow ambulation." (Id.).

Dr. Merkel diagnosed Plaintiff with "left fibula fractured healed – industrial"; "left ankle advanced osteoarthrosis – industrial aggravation"; "severe left ankle deformity"; and "left ankle septic arthritis - nonindustrial." (AR 543-44). He stated that Plaintiff needs to wear a custom lace-up ankle brace with a molded fiberglass stirrup insert. (AR 544). He opined that Plaintiff "is capable of semi-sedentary work." (AR 544). In an attached impairment rating report, he noted that Plaintiff's "gait derangement is classified as Moderate, requiring the routine use of a cane or crutch and a short leg brace (ankle-foot orthosis)." (AR 547). He further opined that Plaintiff had a "whole person impairment" of 30%. (AR 546).

In workers' compensation progress reports completed on January 24, 2013, February 27, 2014, and April 7, 2014, Dr. Merkel reported the following "work status": "Semi-sedentary, allow use of crutches. No squatting, climbing or walking on uneven ground." (AR 534, 539, 550). During these visits, Plaintiff described constant aching pain, which he rated as a nine or ten on a scale of ten. (AR 532, 537, 548). Dr. Merkel observed that Plaintiff was "in no apparent distress." (AR 533, 538, 548). In the April 7, 2014 report, Dr. Merkel noted that Plaintiff was managing his pain with Tramadol "as needed." (AR 532). Plaintiff was "unable to ambulate without the use of his boot." (AR 532). Dr. Merkel noted, however, that

Plaintiff was unsure about whether he wanted surgery; Plaintiff was instead "more interested in conservative management." (AR 532).

The ALJ, citing the exhibit containing Dr. Merkel's reports, noted that he needed to "carefully assess[]" the credibility and relevance of physicians' opinions that were offered "in the context of the adversarial workers' compensation claim system." (AR 24). The ALJ explained that, given the nature of such proceedings, "[t]he physicians retained by either party in the context of workers' compensation cases are often biased and do not provide truly objective opinions." (Id.). The ALJ also observed that some of the terms employed in such proceedings have meanings particular to workers' compensation law. (Id.). Therefore, he gave little weight to statements involving these terms, including "temporary total disability," "permanent disability," "permanent and stationary," "industrial impairment," "whole person impairment," and "maximum medical improvement," as well as the term "semi-sedentary work." (AR 24-25).

The ALJ thus gave little weight "to opinions indicating [Plaintiff] is limited to semi-sedentary work with the use of crutches and no squatting, climbing, or walking on uneven ground," (AR 25 (citing Dr. Merkel's records at AR 534, 539, 542, 550)), and instead found that Plaintiff "is restricted to light exertional work with additional limitations," based on reasons that the ALJ had discussed earlier in the decision, upon reviewing the testimony and medical evidence of record. (AR 25; see AR 22-24). The ALJ credited Dr. Merkel's opinion that Plaintiff required an orthotic boot because

Plaintiff "was prescribed and does use" the boot. (Id.). However, the ALJ gave little weight to the opinion that Plaintiff needs a cane or crutch, as Plaintiff testified that he was able to adequately perform his activities of daily living with the orthotic boot and never mentioned needing a cane or crutch. (Id.).

Plaintiff contends that the ALJ improperly rejected Dr. Merkel's opinion based on Dr. Merkel's use of workers' compensation terminology. (See Joint Stip. at 6-8). An ALJ is not permitted to disregard a physician's opinions solely on this basis. Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105-06 (C.D. Cal. 2002); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (as amended) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."). An ALJ must evaluate such opinions "just as he or she would evaluate any other medical opinion," and "must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." Booth, 181 F. Supp. 2d at 1106 (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988)). "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Id.

The ALJ articulated specific and legitimate reasons for rejecting Dr. Merkel's opinion. Although the ALJ did not explicitly translate the term "semi-sedentary" to an equivalent social security term, the ALJ explicitly recognized and took into account the term's different meanings in workers' compensation and social security proceedings. The ALJ rejected the restriction to "semi-sedentary" work not simply because it applied to workers' compensation proceedings, but also because the assessment conflicted with the ALJ's finding that the record evidence supported "a restriction to light exertional work with additional limitations." (AR 25). Those "additional limitations" include that Plaintiff "can stand and walk for two hours out of an eight-hour workday." (AR 21).

The ALJ reached this determination after a detailed examination of the record, (see AR 22-24), noting that, among other things, Plaintiff's own testimony was consistent with the lifting requirements of light work. Specifically, when asked how much weight he "could lift comfortably throughout a working day," Plaintiff answered, "Maybe 25, 20 pounds. I don't know." (AR 22, 40). The regulations provide that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Plaintiff had also reported being able to shower, take the trash out, and do light housekeeping chores without assistance. (AR 22, 223). Moreover, the ALJ reasonably found that Plaintiff had "generally received routine, conservative, and non-emergency treatment since the alleged onset date." (AR 23). Plaintiff's treatment mainly involved taking pain medications and wearing the orthotic boot, and he apparently wished

to continue with that conservative level of treatment.  (See, e.g.,
AR 532 (April 7, 2014 report from Dr. Merkel noting that Plaintiff
was managing his pain with Tramadol "as needed," that he required his
boot for walking, and that he was "more interested in conservative
management" than pursuing surgery)).  Thus, the ALJ adequately took
into account and rejected a restriction to "semi-sedentary work" –
whatever such a term might entail in the social security context[4] –
by finding that the evidence instead supported a restriction to light
work with standing and walking for two hours in an eight hour
workday, among other limitations.  (AR 21).

The ALJ also articulated a legitimate basis to reject the
opinion that Plaintiff needs a cane or crutches.  Apparently, the
only explicit medical opinion requiring any such assistive device is
Dr. Merkel's impairment rating report, on March 4, 2013, which states
that Plaintiff's "gait derangement is classified as Moderate,
requiring the routine use of a cane or crutch and a short leg brace
(ankle-foot orthosis)."  (AR 547).  Otherwise, Dr. Merkel's records
do not indicate whether Plaintiff actually needed to use crutches or
a cane.  His three progress reports in the record – from January 24,
2013, February 27, 2014, and April 7, 2014 – only state to "allow use

---

[4] Plaintiff points out that "semi-sedentary work" means "half
the time seated [and] half the time standing with a minimum of
demands of physical effort." (Joint Stip. at 7 (citing Cal. Dep't of
Industrial Relations, Schedule for Rating Permanent Disabilities
(Apr. 1997), available at http://www.dir.ca.gov/dwc/pdr1997.pdf).
That interpretation is less restrictive than the ALJ's
standing/walking limitation of two hours per workday. Otherwise, to
the extent that the ALJ rejected a limitation to "a minimum of
demands of physical labor," the ALJ adequately supported that
assessment for the reasons discussed above.

11

of crutches." (AR 534, 539, 550). The April 7, 2014 report remarks that Plaintiff was "unable to ambulate without the use of his [orthotic] boot," but does not suggest a need for crutches or a cane. (AR 532). As the ALJ correctly observed, Plaintiff never mentioned using a cane or crutch. (AR 25). At the hearing, Plaintiff showed the judge that he wears an orthotic boot. (AR 36-37). He stated, "I can't walk without this boot." (AR 38). He testified that aside from pain medication, he does not use anything else to relieve the pain in his foot. (AR 40). It was reasonable for the ALJ to infer that Plaintiff does not actually require a cane or crutch, and to reject Dr. Merkel's unsupported opinion to the contrary.

Accordingly, the ALJ did not err in rejecting Dr. Merkel's opinions. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (treating physician's opinion may be discredited because it is "inadequately supported by clinical findings"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ properly discounted treating physician's opinion for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record what the basis for these restrictions might be"); Magallanes v. Bowen, 881 F.2d at 752 (ALJ's decision to reject the treating physician's opinion due to a lack of medical evidence was sufficiently "specific and legitimate" and based on substantial evidence in the record).

//

//

//

12

**B.    The ALJ Did Not Err In Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight."  See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina, 674 F.3d at 1112.  In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)).    In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d at 1282.    Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284.  Absent affirmative evidence of malingering, however, the ALJ may reject a plaintiff's testimony only "by offering specific, clear and

13

1 convincing reasons for doing so." Id. In assessing a claimant's

2 alleged symptoms, an ALJ may consider the following:

3

4     (1) ordinary techniques of credibility evaluation, such as

5     claimant's reputation for lying, prior inconsistent

6     statements concerning the symptoms, and other testimony by

7     the claimant that appears to be less than candid; (2)

8     unexplained or inadequately explained failure to seek

9     treatment or to follow a prescribed course of treatment;

10     and (3) the claimant's daily activities.

11

12 Id. An ALJ may also consider observations of treating and examining

13 physicians and other third parties. Id.

14

15     Here, the ALJ found that Plaintiff's "medically determinable

16 impairments could not reasonably be expected to cause the alleged

17 symptoms." (AR 22). The ALJ further found that Plaintiff's

18 "allegations concerning the intensity, persistence, and limiting

19 effects of his symptoms are less than fully credible based on

20 [Plaintiff's] admitted activities of daily living and work history."

21 (Id.). The ALJ also found the severity of Plaintiff's allegations

22 inconsistent with the objective medical evidence and Plaintiff's

23 conservative treatment. (AR 23).

24

25     The ALJ noted that Plaintiff's activities of daily living were

26 "somewhat limited," but they required some physical abilities that

27 are needed to maintain employment and "are inconsistent with the

28 presence of an incapacitating or debilitating condition." (AR 22).

14

The ALJ pointed, for example, to Plaintiff's testimony that he can drive and can comfortably lift twenty to twenty-five pounds, as well as his testimony that he babysits his granddaughter, does yardwork, and shops for groceries with his wife. (AR 22, 40-44). Plaintiff also had reported being able to shower, take the trash out, and do light housekeeping chores without assistance. (AR 22, 223). Plaintiff's ability to perform various everyday activities is a legitimate basis to discount Plaintiff's credibility. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her boyfriend, and manage finances). Even if Plaintiff's activities do not show that he was unimpaired, the ALJ reasonably found these admitted activities to be inconsistent with the level of impairment that Plaintiff alleged. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ reviewed the medical evidence in detail. (AR 23-24). Among other evidence, a treatment record from September 29, 2010 indicated that Plaintiff had been able to ambulate since his ankle injury a few weeks earlier. (AR 23, 348). On October 29, 2013, Plaintiff exhibited decreased range of motion in the left ankle, but his gait and station were within normal limits. (AR 23, 265). As noted above, Plaintiff's treatment has mainly involved taking pain medications and wearing the orthotic boot, and he apparently wished

15

to continue with that conservative level of treatment. (See, e.g., AR 532 (April 7, 2014 report from Dr. Merkel noting that Plaintiff was managing his pain with Tramadol "as needed," that he required his boot for walking, and that he was "more interested in conservative management" than pursuing surgery)).

In addition, the ALJ considered Plaintiff's work history, finding that it "shows that [Plaintiff] worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments." (AR 22; see AR 180 (earnings history)). Plaintiff suggests that work history is no longer a permissible factor to consider, in light of the recent Social Security Ruling ("SSR") 16-3p, which superseded SSR 96-7p and eliminated the term "credibility" from the agency's sub-regulatory policy. However, SSR 16-3p became effective on March 28, 2016, and is not applicable to the ALJ's decision that was issued on September 21, 2015. Furthermore, the Ninth Circuit has noted that SSR 16-3p "makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 n.5 (9th Cir. 2017) (as amended) (quoting SSR 16-3p). Under Ninth Circuit precedent, an ALJ may rely on a claimant's poor work history as a factor in evaluating the

16

claimant's testimony.[5]  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("Ms. Thomas' work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability."); Aarestad v. Comm'r of Soc. Sec. Admin., 450 F. App'x 603, 604 (9th Cir 2011) ("The evidence showed that Aarestad worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)."). Here, the ALJ appropriately relied on Plaintiff's "sporadic[]" work history as a factor in weighing the credibility of Plaintiff's allegations.

Accordingly, based on Plaintiff's treatment history, activities of daily living, and work history, the ALJ properly discounted Plaintiff's credibility by giving specific, clear, and convincing reasons that are supported by substantial evidence in the record.

---

[5]  Indeed, Plaintiff notably includes "the claimant's work record" among the "factors to be considered in weighing a claimant's credibility." (Joint Stip. at 19 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002); 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p)).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 13, 2018

                                    _____/s/_____
                                          ALKA SAGAR
                                    UNITED STATES MAGISTRATE JUDGE

18